**In the United States District Court**
**For the Southern District of Texas**
**Galveston Division**

| | |
|---|---|
| **Neil Gilmour, Trustee for the Grantor Trusts of** §<br>**Victory Medical Center Craig Ranch, LP,** §<br>**Victory Medical Center Landmark, LP,** §<br>**Victory Medical Center Mid-Cities, LP,** §<br>**Victory Medical Center Plano, LP,** §<br>**Victory Medical Center Southcross, LP,** §<br>**Victory Parent Company, LLC,** §<br>**Victory Medical Center Beaumont, LP, and** §<br>**Victory Surgical Hospital East Houston, LP,** §<br>    *Plaintiffs*, §<br> §<br>**v.** §<br> §<br>**Humana Health Plan of Texas, Inc. and** §<br>**Humana Insurance Company,** §<br>    *Defendants* § | **Civil Action No. 3:17-cv-00179** |

**Plaintiffs' Original Complaint**

Plaintiff Neil Gilmour, Trustee for Victory Medical Center Craig Ranch, LP, Victory Medical Center Landmark, LP, Victory Medical Center Mid-Cities, LP, Victory Medical Center Plano, LP, Victory Medical Center Southcross, LP, and Victory Parent Company, LLC; and Plaintiff Victory Medical Beaumont, LP, and Plaintiff Victory Surgical Hospital East Houston LP (collectively, "Plaintiffs"), file this Original Complaint against Defendants, Humana Health Plan of Texas, Inc. and Humana Insurance Company (collectively, "Humana" or "Defendants"):

**Jurisdiction and Venue**

1.      This Court has personal jurisdiction over all Defendants because they all conduct substantial business in Texas and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Texas.

2.      The Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. §§ 1001 et seq., the Employment Retirement Income Security Act ("ERISA"), as Plaintiffs' claims in

1

part arise under ERISA.  To the extent that Plaintiffs bring claims that do not arise out of ERISA, the Court has pendant matter jurisdiction, or alternatively subject matter jurisdiction over those claims pursuant to 28 U.S.C. § 1332(a) because this is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred in this district.

## Parties

4.      Victory Medical Center Craig Ranch, LP ("Victory Craig Ranch") was a Texas limited partnership that formerly operated a hospital located at 6045 Alma Road, Suites 100 and 200, in McKinney, Collin County, Texas 75070, where Victory Craig Ranch was headquartered. Victory Craig Ranch was a privately-owned entity that provided specialized-surgical-hospital services to patients in the Dallas-McKinney market.  Victory Craig Ranch filed a petition for relief under Chapter 11 of the Bankruptcy Code on June 12, 2015, Case Number 15-42379 in the Northern District of Texas, Fort Worth Division.

5.      Victory Medical Center Landmark, LP ("Victory Landmark") was a Texas limited partnership that formerly operated a hospital located at 5330 N. Loop 1604W, in San Antonio, Bexar County, Texas 78249, where Victory Landmark was headquartered.  Victory Landmark was a privately-owned entity that provided specialized-surgical-hospital services to patients in the San Antonio market.  Victory Landmark filed a petition for relief under Chapter 11 of the Bankruptcy Code on June 12, 2015, Case Number 15-42382 in the Northern District of Texas, Fort Worth Division.

6.      Victory Medical Center Mid-Cities, LP ("Victory Mid-Cities") was a Texas limited partnership that formerly operated a hospital located at 1612 Hurst Tower Center Drive, in Hurst,

Tarrant County, Texas 76054, where Victory Mid-Cities was headquartered.  Victory Mid-Cities was a privately-owned entity that provided specialized-surgical-hospital services to patients in the Dallas-Fort Worth market.  Victory Mid-Cities filed a petition for relief under Chapter 11 of the Bankruptcy Code on June 12, 2015, Case Number 15-42373 in the Northern District of Texas, Fort Worth Division.

7.      Victory Medical Center Plano, LP is ("Victory Plano") was a Texas limited partnership that formerly operated a hospital located at 2301 Marsh Lane, in Plano, Collin County, Texas 75093, where Victory Plano was headquartered.  Victory Plano was a privately-owned entity that provided specialized-surgical-hospital services to patients in the Dallas-Plano market.  Victory Plano filed a petition for relief under Chapter 11 of the Bankruptcy Code on June 12, 2015, Case Number 15-42377 in the Northern District of Texas, Fort Worth Division.

8.      Victory Medical Center Southcross, LP ("Victory Southcross"), formerly known as Innova Hospital San Antonio, LP, was a Texas limited partnership that formerly operated a hospital located at 4243 E. Southcross Blvd., San Antonio, Texas 78222, where Victory Southcross was headquartered.  Victory Southcross was a privately-owned entity that provided specialized-surgical-hospital services to patients in the San Antonio market.  Victory Southcross filed a petition for relief under Chapter 11 of the Bankruptcy Code on July 10, 2015, Case Number 15-42818 in the Northern District of Texas, Fort Worth Division.

9.      Victory Parent Company, LLC ("VPC") is a Texas limited liability company.  VPC as the sole member of Victory Medical Beaumont GP, LLC, the general partner of Victory Beaumont.  VPC is also the sole member of Victory Surgical Hospital East Houston GP, LLC, Victory East Houston's general partner.  VPC was headquartered in the city of The Woodlands, Montgomery County, Texas.  VPC filed a petition for relief under Chapter 11 of the Bankruptcy

3

Code on June 12, 2015, Case Number 15-12384 in the Northern District of Texas, Fort Worth Division.

10.     Plaintiff Neil Gilmour is the trustee for the Grantor Trusts for Victory Medical Center Craig Ranch, LP, Victory Medical Center Landmark, LP, Victory Medical Center Mid-Cities, LP, Victory Medical Center Plano, LP, Victory Medical Center Southcross, LP, and Victory Parent Company, LLC.  Gilmour was appointed trustee pursuant to the First Amended Plan of Reorganization (the "Plan") confirmed on March 28, 2016, in Case No. 15-42373 in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.  Pursuant to the Plan, all of the debtors' claims and causes of action against the Defendants have vested in the Grantor Trusts.

11.     Plaintiff Victory Medical Center Beaumont, LP ("Victory Beaumont") is a Texas limited partnership that formerly operated a hospital located at 6025 Metropolitan Drive, in Beaumont, Jefferson County, Texas 77706, where Victory Beaumont was headquartered.  Victory Beaumont was a privately-owned entity that provided specialized-surgical-hospital services to patients in the Beaumont market.

12.     Plaintiff Victory Surgical Hospital East Houston, LP ("Victory East Houston") is a Texas limited partnership that formerly operated a hospital located at 12950 East Freeway, Suite 100, in Houston, Harris County, Texas 77015, where Victory East Houston was headquartered.  Victory East Houston was a privately-owned entity that provided specialized-surgical-hospital services to patients in the Houston market.

13.     References in this Complaint to "Victory" include collectively, Victory Craig Ranch, Victory Landmark, Victory Mid-Cities, Victory Plano, Victory Southcross, Victory Beaumont, Victory East Houston, and VPC.  References in this Complaint to "Plaintiffs" include

4

collectively Victory Beaumont and Victory East Houston, and Neil Gilmour as the Trustee for the Grantor Trusts for Victory Craig Ranch, Victory Landmark, Victory Mid-Cities, Victory Plano, Victory Southcross, and VPC.

14.     Defendant Humana Health Plan of Texas, Inc. ("HHP") is a corporation of the State of Kentucky with its principal place of business located at 500 W. Main St., Louisville, Kentucky 40202.  It may be served with process through its registered agent, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

15.     Defendant Humana Insurance Company ("HIC") is a corporation of the State of Kentucky with its principal place of business located at 500 W. Main St., Louisville, Kentucky 40202.  It may be served with process through its registered agent, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

**Introduction to the Dispute**

16.     Plaintiffs file this Complaint against Defendants because Defendants have engaged in a pattern of drastically underpaying and refusing to pay Victory for healthcare services claims that Victory has submitted to Defendants for reimbursements.  Defendants have consistently and drastically underpaid Victory in amounts in excess of millions of dollars in the aggregate. Defendants have not paid Victory as required by ERISA, other applicable law, and the governing documents for the healthcare plans directly insured and/or administered by Humana (the "Humana Plans").

17.     Victory consisted of a group of acute care hospitals that provided medical procedures to hundreds of insureds of Humana.  Defendants failed to appropriately reimburse Victory under the terms of the Humana Plans, including no reimbursement whatsoever for a significant number of medically-appropriate procedures.  Plaintiffs seek, among other things,

damages for the appropriate reimbursement under those plans pursuant to ERISA as well as under Texas common law for breach of contract for those claims for which appropriate reimbursement is sought that are not governed by ERISA. Moreover, Plaintiffs seek damages based on misrepresentations made by Humana representatives as detailed below.

18.    Plaintiffs have obtained some of the applicable Summary Plan Descriptions ("SPDs") outlining how Defendants ought to have processed some of the claims at issue in this case. The SPDs currently available to the Plaintiff show that, unless Humana accepted Victory's charge or a fee was negotiated between Humana and Victory on a case-by-case basis, the claims at issue in this case will be governed generally by the two traditional measures for calculating an allowed amount for out-of-network providers: some form of a reasonable and customary charge, and some percentage of what Medicare would pay for the same or similar healthcare services.

19.    Moreover, the terms of the SPDs often contradict what Victory's representatives were told over the phone by Humana representatives. To the extent that the terms of the actual Humana Plans provided for reimbursements less than the representations provided by Humana representatives, Victory performed its medical procedures under the mistaken impression that more favorable terms would control and in reliance on the information provided by Humana representatives.

20.    Humana provided health benefit plans and health insurance policies to businesses and individuals throughout the United States, including Texas. Humana plans and policies include individual health benefit plans and employer-sponsored group health plans. Humana also acted as a third-party administrator ("TPA") for some of these plans.

21.    In many instances, a beneficiary-patient's healthcare benefit plan is governed by the applicable provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.

§ 1001, et seq, state law, and the governing healthcare plan documents. The beneficiary-patient's ERISA health plan is interpreted by the plan administrator, which may be the employer but which can also be a TPA, such as Humana, if the plan sponsor delegates or assigns that authority to the TPA.

22.     Plaintiffs bring this action under ERISA, state law and federal law, and pursuant to the Humana Plans. The Humana Plans at issue allow beneficiary-patients (the "Humana Subscribers") to obtain healthcare services from facilities that have not entered into contracts with Humana (referred to as "out-of-network," or "non-participating" providers) or from facilities that are "in-network" with Humana. At all relevant times, Humana was the administrator, fiduciary, relevant party-in-interest, and/or the obligor for each of the Humana Plans. Humana was responsible for making final benefit decisions and the extent of payment on claims submitted by Victory. For all intents and purposes relevant to this proceeding, Humana essentially was the Humana Plans.

23.     Under the Humana Plans and applicable law, Humana is required to promptly pay benefits for out-of-network services based on the terms provided in the Humana Plans. The applicable manner in which benefits are determined is contained in the SPD provided to each Humana Subscriber.

24.     Under the Humana Plans, Humana is required to pay promptly benefits for out-of-network services based on rates provided in the Humana Plans. Depending on the specific Humana Plan, those rates generally include:

- The fee charged by Victory.

- The fee negotiated with Victory on a case by case basis.

- Some version of the reasonable and customary rate.

- A percentage of Medicare rates.

- Other rate(s) as otherwise defined in the applicable Plans.

The applicable rate for each Humana Plan is contained in the SPD provided to each Humana Subscriber.

25. With regard to all Humana Subscribers, prior to or at the time of treatment, as a condition to providing treatment, Victory required that they sign documents whereby Victory obtained an assignment and transfer of causes of action and claims ("Assignment") from each Humana Subscriber. Under each Assignment, Victory acquired Humana Subscriber's benefit rights under the Humana Plans with respect to both ERISA and non-ERISA governed plans. Victory did not waive a deductible or co-payment by the acceptance of the Assignment. As an assignee, Victory obtained standing to sue Defendants under ERISA as well as under other applicable law.

26. Upon information and belief, Humana's management responsibilities for some of the Humana Plans are memorialized in agreements with the Humana Plans (those Agreements are referred to herein as "Master Services Agreements"). Pursuant to the Master Services Agreements, Humana earned fees for the services they provided.

27. Despite its best efforts, Victory could not remain in business, in part driven by the lack of appropriate payments by Humana. The Victory entities filed for bankruptcy in June 2015.

**Additional Factual Background**

**I.     Victory consisted of out-of-network facilities.**

28. Health care providers are either "in-network" or "out-of-network" with respect to insurance carriers. "In-network" providers are those who contract with health insurers to accept payments in full at rates discounted from their usual and customary charges for covered services in exchange for such insurers steering patients to their facilities and thereby increasing the providers' volume. "Out-of-network" providers are those that do not have contracts with insurance

carriers to accept discounted rates from their usual and customary charges. Victory was an out-of-network provider and treated Humana Subscribers at its facilities.

29.     Victory prominently advised its patients and the public of its out-of-network status. Documents identifying Victory as an out-of-network hospital were provided to patients when they entered the Victory hospitals and when they agree to receive treatment. In addition, signs in the admitting area of the Victory hospitals informed patients that Victory was an out-of-network hospital.

30.     Defendants charged the Humana Subscribers higher premiums for the inclusion of "out-of-network" benefits in their Humana Plans. Humana Subscribers may choose an out-of-network provider for a variety of reasons, such as the quality of care and amenities available at a particular facility or access to a specific doctor, as is the patient-beneficiary's choice under the Humana Plans. Despite the foregoing, and despite Victory's out-of-network status, Humana Subscribers frequently sought treatment at Victory.

**II.    Victory received a complete Assignment of claims against Defendants related to the healthcare services Victory provided to the Humana Subscribers.**

31.     Upon registration at Victory, all patients, including Humana Subscribers, executed an assignment of claims/benefits form, among other documents. In the Assignment, Humana Subscribers irrevocably and fully assigned to Victory their rights to benefits, claims, and causes of action under the Humana Plans, including the right to sue the Defendants for benefits and breach of other duties, including fiduciary duties.

32.     In this case there are at issue self-funded plans which Humana administers, as well as fully-funded plans which Humana issues. When Humana insures a plan directly, as well as when it exercised discretionary authority or control of self-insured plans, Humana acts as a fiduciary. Humana therefore owed fiduciary duties to all members and subscribers in its ERISA

plans and also to Victory's facilities as beneficiaries and assignees of the assignments of benefits and rights executed by the Humana Subscribers who received services at those facilities. As the assignee of the Humana Subscribers, Victory stands in their shoes and has all rights they would have to enforce the terms and benefits of the Humana Plans.

33.     Upon information and belief, most of the Humana Plans did not prohibit the Humana Subscribers from assigning their rights to benefits under the Humana Plans to Victory, including the right of direct payment of benefits under the Humana Plans to Victory.

34.     Moreover, to the extent that any of the Humana Plans prohibited the assignment of benefits to Victory, Defendants have waived any purported anti-assignment provisions, have ratified the assignment of benefits to Victory, and/or are estopped from using any purported anti-assignment provisions against Victory due to their course of dealing with and statements to Victory as an out-of-network provider. Through the verification process and claim submission (which included a written disclosure of an assignment) the Defendants were aware that the Humana Subscribers had executed valid assignments in favor of Victory and the Defendants have not raised any anti-assignment concerns.

35.     Additionally, to the extent that any of the Humana Plans prohibited the assignment of benefits to Victory, any such purported anti-assignment prohibitions are unenforceable as, among other things, contrary to public policy, as adhesion contracts, and/or due to a lack of privity with Victory.

36.     In addition to receipt of the Assignment, before admitting a patient, Victory would contact Defendants by telephone to verify the patient's benefits: that he/she had insurance, that the insurance plan at issue provided for out-of-network benefits, whether there were limitations or exclusions applicable, and what the patient deductible, out-of-pocket maximum, and coinsurance

were. Victory would also ask how the Humana Plan covering the Humana Subscriber at issue determined the out-of-network benefits for the procedure(s) at issue.

### III.    Defendants drastically underpaid Victory's claims for reimbursement.

37.    Victory treated over 200 Humana Subscribers subject to this lawsuit at Victory hospitals and accordingly billed Defendants for the medical services provided to these Humana Subscribers. Victory's total charges for these claims was approximately $14 million in the aggregate, reflecting the usual and customary fees for the particular medical services provided at Victory.

38.    However, to date, Defendants have reimbursed Victory for only a fraction of this amount— approximately $1.7 million in the aggregate. Even factoring in amounts that Defendants contend are the patients' responsibility under the applicable Humana Plans (*i.e.*, the Humana Subscriber's co-payments, coinsurance, and deductibles), the total payments made by Defendants are a mere fraction of the Victory's total usual and customary charges—leaving an unpaid balance due of approximately $7.6 million on these 245 accounts/claims.[1]

39.    Attached hereto as Schedule 1 is a summary of the claims as issue in this lawsuit broken down by each Plaintiff against each Defendant. Schedule 1 is incorporated herein for all purposes. The summary provides the aggregate amount of charges, insurance payments, the patient's estimated share (*i.e.*, co-pay, deductible and co-insurance), and balance due (based on the out-of-network benefits under the Humana Plans) for each of the Victory hospitals and each of the Defendants, as well as the number of Humana Subscribers' claims.

---

[1] Schedule 1 includes a summary of these claims, broken down by facility (*e.g.*, Victory Landmark, Victory Beaumont, etc.). Schedule 2 also includes a listing of each individual claim at issue in this case by account number, claim number and patient initials and is incorporated herein by this reference. Plaintiffs have provided Humana with details concerning all 245 claims prior to filing this lawsuit.

40.    In violation of their duties under ERISA, the Humana Plans, and state law, Defendants have: i) failed and refused to pay Victory appropriately for health care services that Victory has provided to Humana Subscribers who are covered by Humana Plans; ii) failed and refused to provide a full and fair review of Victory's charges; and iii) failed and refused to provide a meaningful review and appeal process.

41.    Victory treated approximately 245 Humana Subscribers at issue in this lawsuit[2] at the Victory facilities and accordingly submitted claims to Defendants for the medical services provided to these Humana Subscribers.  Victory's aggregate usual and customary charges for these claims was approximately $14 million, reflecting the usual and customary charges for the particular medical services provided at the Victory facilities.  Before rendering such services, Victory received coverage verification and pre-certification that the services to be rendered by Victory were covered under the Humana Plans.  Victory relied on those communications from Defendants, and without such assurances, Victory would not have provided the proposed medical services to the Humana Subscribers.

42.    However, to date, Defendants have reimbursed Victory only a fraction of its usual and customary charges and the amounts provided for under the Humana Plans.  For many Humana Subscribers, Victory provided treatment but received *zero* (approximately 83 claims with aggregate charges of approximately $1.77 million received zero reimbursement) or *extremely low* (meaning 30% or less of billed charges) reimbursement from Defendants.  Even factoring in amounts that Defendants contend are the patients' responsibility under the applicable Humana

---

[2] Victory treated over 500 Humana Subscribers, but for purposes of this lawsuit, Victory brings claims related to the 245 Humana Subscribers for which Victory was paid 30% or less of Victory's submitted charges.  The Humana Subscribers at issue in this lawsuit do not include those for which Victory was paid more than 30% of its usual and customary charges.  Victory reserves the right to bring claims relating to the remaining Humana Subscribers.

Plans (*i.e.*, the Humana Subscriber's co-payments, coinsurance, and deductibles), the total payments by Defendants are a mere fraction of Victory's total usual and customary charges. Defendants' payment shortfalls leave an aggregate unpaid balance of approximately $7.6 million in the aggregate on these 245 accounts/claims. Defendants' pattern of dramatically underpaying Victory is in clear violation of the terms of the Humana Plans covering the Humana Subscribers, as well as state and federal law.

43.     Because of Defendants' practices, Victory has been reimbursed in amounts substantially less than what it should have been paid pursuant to the healthcare plans of their subscriber patients and in some instances, nothing at all. Defendants pursued standard and uniform policies in making reimbursement determinations in a fashion that conflicted with its contractual obligations under the Humana Plans and constituted an abuse of discretion. In addition, Defendants misrepresented to its members/subscribers (i.e., the Humana Subscribers) and the assignee thereof, Victory, that the methods used to calculate benefits were based on valid data or legitimate reasons.

**IV.     Defendants violate the terms of the Humana Plans.**

44.     The Humana Plans provide for payment of Victory's services to Humana Subscribers at various rates set forth in the applicable Humana Plans. Victory's total submitted charges reflect Victory's usual and customary fees for the particular medical services provided at Victory. The payments Defendants made to Victory (even after factoring in amounts that Defendants contend are the patients' responsibility under the applicable Humana Plans, such as the Humana Subscriber's co-payments, co-insurance, and deductibles) fell far short of the reimbursements required under the Humana Plans.

45.     Humana Subscribers would choose a Victory facility because of the personal superior quality of service Victory provided. Infection rates at Victory facilities were extremely

low.  Victory provided its patients with unique convenience and highly specialized services. Victory offered amenities not offered in most hospitals, such as one-on-one nursing care.

46.    Significantly, Humana Subscribers who sought treatment at Victory paid higher premiums, at times substantially higher premiums, in order to have the right under the Humana Plans to receive medical treatment from the provider of their choice, including from out-of-network providers such as Victory.  They bargain for and expect that payment be made at the reimbursement rates provided in the Humana Plans for the rendering of medical treatment for Humana Subscribers.  Defendants' actual reimbursements to Victory fell far below these reasonable expectations.

47.    After providing medical services to a Humana Subscriber, Victory's facilities would send a claim to Humana.  Under the Humana Plans, Humana is supposed to determine the out-of-network benefits for services provided, apply the various metrics discussed above, and arrive at a reimbursement under the applicable Humana Plans.  Humana makes this determination in the normal course of business.  Humana exercised discretionary authority and/or discretionary control over the Humana Plans which it administered, which the Plan Sponsors, with whom the Humana had contracts, had unequivocally yielded to Humana.

48.    Defendants acted as the plan administrators and as fiduciaries to the beneficiaries for each of the claims at issue in this case.  Defendants exercised discretion, authority, control and oversight in determining if plan benefits would be paid and the amounts of plan benefits that would be paid.  Defendants' administration of these claims resulted in the payment of a just a fraction of usual, customary, and reasonable rates for medical services rendered, and in all cases substantially less than the reimbursements required under the Humana Plans.

49.    Humana ignored the Humana Plans and processed claims according to some methodology not to be found in the Humana Plans.  Moreover, Humana also did not pay anything on a significant portion of claims.

50.    In addition to underpayments or zero payments, Defendants engaged in other conduct that delayed or reduced payments to Victory in violation of the Humana Plans and the law, including but not limited to:

- "Zero payments" – where Defendants paid Victory nothing at all despite Victory providing treatment to Humana Subscribers.

- "No written explanation" – where Defendants failed to provide a written explanation for situations where they did not pay the full benefit amount owed or did not pay in accordance with the applicable Humana Plan.

- "Inaccurate reasons provided" – where Defendants justified non-payment or inadequate payment based on inaccurate reasons.

- "Inappropriate offsets" – where Defendants "offset" past payments they actually made to Victory by reducing payment for future unrelated claims, resulting in low or zero paid on the subsequent claims submitted and approved.[3]

- "Skewed Fee Schedules" – where Defendants used fee schedules and other metrics to determine benefit amounts under the Humana Plans when such fee schedules and other metrics were skewed heavily in Humana's favor and did not represent accurate and fair data upon which to determine the benefit amount.  Moreover, Humana would hide from providers like Victory the manner in which its fee schedules were determined.

51.    Victory has provided Defendants with all information necessary to adjudicate and process the claims at issue.  Yet, even after Victory's repeated requests, Defendants have refused to correct blatant underpayments and cease their wrongful conduct.

---

[3] The result was a *de facto* adverse benefits determination on the account against which Defendants effected the "offset" and,  also as to the account which Defendants supposedly determined was overpaid.  In violation of ERISA Defendants failed to provide an adequate explanation of benefits for the offsets.  Moreover, these "offsets" were not authorized, not supported by any agreement or law, and were an improper and unlawful self-help remedy.

52.     Defendants have wrongly failed to pay in accordance with the terms of the Humana Plan documents.  Defendants have also wrongly made claim determinations without valid or appropriate data and/or without adequate reasons to support reduced payments.  Defendants' method of processing Victory's claims was disingenuous and arbitrary, and resulted in Defendants severely underpaying Victory's claims.

53.     Defendants' arbitrary method of determining and paying claims ignored the requirements of the Humana Plans, as well as the history of claim processing between Defendants and Victory.  Defendants' benefit decisions were not reasonable, nor were they supported by the evidence available to Defendants.  Moreover, such decisions were arbitrary and made in bad faith.

54.     The Humana Plan documents specify how Defendants are required to pay out-of-network healthcare providers.  But Defendants have failed to comply with those requirements when paying (or failing to pay) Victory.  Either Defendants wholly failed to comply with the Humana Plan requirements or its interpretation of the payment provisions in the Humana Plans was arbitrary and an abuse of discretion.

**V.      Victory exhausted available internal appeals remedies.**

55.     Victory has used all reasonable efforts to exhaust available appeals avenues under the Humana Plans and followed applicable appeal procedures to convince Defendants to reimburse Victory properly on the claims for medical services that Victory provided to the Humana Subscribers.

56.     Despite exhausting the appeal procedures, Defendants have failed to reimburse Victory for the health care services Victory provided to Humana Subscribers, and approximately $7.6 million in the aggregate remains due and owing to Victory for these services.

57.     Defendants routinely denied appeals without any meaningful explanation and in some cases they failed to respond to the appeal at all. Moreover, despite Victory's appeals,

Defendants have failed to adequately explain the basis for their dramatic underpayments to Victory as required by applicable law.  In particular, Defendants have failed or refused to: (a) provide written notice of benefit determinations within ninety (90) days of claim submission; (b) provide the specific reason or reasons for the denial of claims; (c) provide the specific plan provisions relied upon to support the denials; (d) provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; (e) describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; and/or (f) notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits.

58.    Other examples of Defendants' failure to follow appropriate claims processing procedures include:

- Form letter denials where the reason for the denial is left blank;

- Form letter denials where the reason for the denial does not address in any way the basis for Victory's appeal;

- Failing to respond to an appeal far longer than provided for under ERISA, then belatedly issuing a denial based on the untimely filing of appeals which were timely filed;

- Routinely denying implants expressly covered under Humana's guidelines;

- Insisting on retroactive audits demanding medical records that had already been provided in violation of Victory's audit policy; and

- Routinely asserting that it had made an overpayment without providing a basis or reason for such determination and then using such alleged overpayment supposedly to "pay" subsequent approved claims without actually giving Victory money.

59.    The foregoing tactics in many instances essentially prevented Victory from complying with all appeal procedures.  In cases where the internal appeal process may not have been exhausted, full exhaustion is excused because Defendants deprived Victory of meaningful access to administrative remedies and/or further attempts to appeal would have been futile.  For

example, Defendants failed to follow claims procedures required under ERISA §503, and the Department of Labor's regulatory requirements in 29 C.F.R. § 2560, 503-1(f) and (g)(1), as described above.  In addition, Defendants repeatedly denied millions of dollars of claims and refused to provide the information necessary for Victory to make an appropriate appeal.  Victory had exhausted its appeals on a substantial number of such claims and, in light of Defendants' repeated failure to offer any meaningful administrative process for challenging their denials of these claims, it was simply futile for Victory to pursue administrative appeals as to the remaining claims.

## VI.    Misrepresentations

60.    Before performing procedures on Humana Subscribers, Victory received verification of benefits from Humana.  Victory would verify the insured's benefit levels and that no exclusions applied.  As part of that process, many times Humana would provide the basis upon which it would determine the out-of-network benefits.  As noted above, Humana would often provide a basis that was more advantageous to Victory than the actual terms contained in the applicable Humana Plan for determining out-of-network benefits.  For example, on many occasions Humana would verify that the out-of-network benefits would be determined by the hospital's usual and customary charge or some form of reasonable and customary rate.  Victory subsequently learned that the Humana Plans provided for a different method of determining the out-of-network benefits which produced a lower overall reimbursement than either the usual and customary or reasonable and customary methods that were verified.

61.    In such instances, Victory has a separate cause of action for the difference between the actual amount of reimbursement, if any, and the amount represented by Humana's representatives to Victory during verification.

62.    By confirming coverage in this manner, Humana made a clear and definite promise to Victory as to the way out-of-network benefits would be determined and paid.  These unambiguous promises constitute obligations Humana owe to Victory independent of the obligations Humana owe under the applicable Humana Plans.

63.    Victory did not have access to any of the applicable plans covering the Humana Subscribers and therefore had to rely upon the information provided by Humana's agents in order to determine whether and at what amounts Victory would be reimbursed for services performed for Humana Subscribers.

64.    Based upon these representations, Victory provided services to the Humana Subscribers.  Victory's reliance on these representations was foreseeable to Humana.  Through their communications with Victory, Humana knew that Victory was attempting to determine coverage information for Humana Subscribers. And so, Victory reasonably relied upon these representations in providing medical services to the Humana Subscribers.

65.    Victory's reliance upon Humana's coverage and benefit payment promises was detrimental to Victory's business operations and cash flow.  After providing these medical procedures to Humana Subscribers, Victory submitted proper claims to Humana for payment of benefits in accordance with representations made by Humana Entities and their agents.

66.    Despite their obligation to pay each claim, Humana failed, and continue to fail, to pay Victory consistent with the representations made by its agents and its unambiguous promise to pay for the services provided to its members.  Humana is required to pay Victory consistent with the statements made to Victory while confirming coverage and benefits.

67.    As a direct and proximate result of its reliance on Humana's unambiguous representations, Victory has been harmed in excess of $7 million dollars in connection with

approximately 177 claims (out of the total 245 claims at issue) for which Humana's representative verified that the out-of-network benefits would be determined by the usual and customary charges or reasonable and customary rates.  Attached hereto is Schedule 3[4] that includes a summary of these claims broken down by facility.  Schedule 3 is incorporated herein for all purposes.

## VII.    Offsets

68.    Humana utilized the deceptive business practice of using "offsets" to "pay" a significant number of unrelated claims.  Generally, Humana's offset scheme involved an actual payment made on account of a specific Humana Subscriber and then at some point thereafter (it could be many months thereafter), Humana would unilaterally take the position that it had overpaid the claim and then use the amount of the "alleged" overpayment to "pay" other unrelated claims that were otherwise approved.  In many cases, Humana provided no viable explanation for why it determined the initial payment to be an overpayment.  Humana's actions caused an administrative nightmare for Victory because claims had to be re-opened with little to no information to guide Victory in challenging the always belated "overpayment" determination.  Even worse, new claims that were "approved" were "paid" by Humana in a paper transaction but Victory never actually received the money.

69.    Humana routinely used this "offset" technique to confuse and frustrate Victory and to make it virtually impossible for Victory to effectively challenge Humana's unilateral claim decisions.  These "offsets" were in violation of the Humana Plans and Humana's fiduciary duties to the Humana Subscribers and Victory as assignee.

---

[4] Schedule 3 includes a summary of these claims, broken down by facility.  Schedule 4 also includes a listing of each individual claim for which Victory asserts a claim for misrepresentation by account number, claim number, and patient initials, and is incorporated herein by this reference.

70.    Attached hereto is Schedule 5[5] and incorporated herein by this reference is a summary of the aggregate offsets Humana engineered by calendar quarter dating back to the second quarter of 2013.    In the aggregate, Humana actually paid Victory the amount of $1,171,670.75 on account of claims that were approved and reported by Humana as paid in the aggregate amount of $3,225,325.65.    The difference, $2,053.654.90, represents improper and wrongful offsets for which Victory now sues.

**Causes of Action**

**I.    Breach of Plan provisions for benefits in violation of ERISA.**

71.    Plaintiffs incorporates herein the preceding paragraphs.

72.    Victory (and the Plaintiffs) has standing to pursue claims under ERISA as an assignee of the Humana Subscribers' claims under the Humana Plans.

73.    As the assignee of the Humana Subscribers under the Humana Plans, Victory is entitled to reimbursement under the ERISA Plans for the hospital services provided to the Humana Subscribers at the Victory facilities.

74.    All of the Plans require reimbursement of medical expenses incurred by Humana Subscribers at the rates described in Humana Plans.    Humana acted as a fiduciary to its beneficiaries, including Victory as assignee, because they exercised discretion in determining whether plan benefits would be paid, and/or the amounts of plan benefits that would be paid, to those plan beneficiaries.    As a fiduciary under ERISA, Humana is subject to a civil action under § 502(a) of ERISA.    In violation of ERISA, Defendants have breached the terms of the Humana Plans by refusing to make out-of-network reimbursements for charges covered by the Humana

---

[5] Schedule 6 attached hereto reflects the detail behind the improper offsets at issue and can be identified by Humana through the BPR Trace Number.  Schedule 6 is incorporated herein.

Plans at the applicable rates set forth in the Humana Plans in violation of ERISA 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  These breaches include, among other things, refusing to pay the usual and customary charges, and/or reasonable and customary rates, or the prevailing fees or recognized charges or such other rates expressly provided in the Humana Plans, for medically-necessary procedures and services performed at the Victory facilities for the Humana Subscribers.  These breaches also include the improper and unauthorized offsets described above.  Defendants' failure to reimburse Victory for healthcare services provided to the Humana Subscribers was unreasonable and arbitrary.  Defendants abused whatever discretion the Humana Plans may have provided Defendants.

75.     As a result of, among other acts, Defendants' numerous procedural and substantive violations of ERISA, any appeals are deemed exhausted or excused, and Plaintiffs are entitled to have this Court undertake a *de novo* review of the issues raised herein.

76.     Pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiffs are entitled to recover unpaid/underpaid benefits from Defendants.  The attached Schedules 1 and 2 state the amount each of the Plaintiffs seek from each of the Defendants for unpaid/underpaid benefits; the aggregate amount is in excess of $7.6 million.  The attached Schedules 5 and 6 state the amount Victory seeks from the Defendants as a result of the improper and unauthorized offsets, approximately $2,053,654.90.  Plaintiffs are also entitled to declaratory and injunctive relief to enforce the terms of the Plans, as well as attorneys' fees.

## II.     Denial of full and fair review and claims procedures in violation of ERISA.

77.     Plaintiffs incorporate herein the preceding paragraphs.

78.     As an assignee of the Humana Subscribers' claims, Victory is entitled to receive protection under ERISA, including (a) a "full and fair review" of all claims denied by Defendants; and (b) compliance by Defendants with applicable claims procedure regulations.

79.     Although Defendants are obligated to provide a "full and fair review" of denied claims pursuant to ERISA § 503, 29 U.S.C. § 1133 and applicable regulations, including 29 C.F.R. § 2560.503-1 and 29 C.F.R. § 2590.715-2719, Defendants have failed to do so by, among other actions: refusing to provide written notice of benefit determinations within ninety (90) days of claim submission; refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; and/or refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure. By failing to comply with the ERISA claims procedures regulations, Defendants failed to provide a reasonable claims procedure.

80.     Because Defendants have failed to comply with the substantive and procedural requirements of ERISA, any administrative remedies are deemed exhausted pursuant to 29 C.F.R. § 2560.503-1(l) and 29 C.F.R. § 2590.715-2719(b)(2)(ii)(F)(1).   Exhaustion is also excused because it would be futile to pursue administrative remedies, as Defendants do not acknowledge any basis for their denials and thus offer no meaningful administrative process for challenging their denials.

81.    Victory has been harmed by Defendants' failure to provide a full and fair review of appeals submitted under ERISA § 503, 29 U.S.C. § 1133, and by Defendants' failure to disclose information relevant to appeals and to comply with applicable claims procedure regulations. Humana further violated the applicable claims procedure regulations by engaging in conduct that rendered its claims procedure and appeals process unfair to the Humana Subscribers, and their assignee (i.e. Victory).

82.    Plaintiffs are entitled to relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including declaratory and injunctive relief, to remedy Defendants' failures to provide a full and fair review, to disclose information relevant to appeals, and to comply with applicable claims procedure regulations.

### III.    Breach of contract, non-ERISA.

83.    Plaintiffs incorporate herein the preceding paragraphs.

84.    To the extent that some of the Humana Plans are not employee welfare benefit plans governed by ERISA, they are nonetheless valid and enforceable insurance contracts.

85.    As set forth more fully above, all the Humana Plans require reimbursement of medical expenses incurred by Humana Subscribers at specified rates.  Further, under the terms of the Humana Plans, Humana Subscribers are entitled to coverage for the services that they received from Victory.

86.    Pursuant to the "Assignment of Benefits" forms executed by Humana Subscribers, Victory was assigned the right to receive reimbursement under the Humana Plans for the services that it rendered to the Humana Subscribers.  Pursuant to said assignments, Defendants are contractually obligated to reimburse Victory for these services.

87.    Defendants failed to make payment of benefits to Victory in the manner and amounts required under the terms of the Humana Plans.

88.    As the result of Defendants' failures to comply with the terms of the Humana Plans, Victory, as assignee, has suffered damages and lost benefits, for which Plaintiffs are entitled to damages from Defendants, including unpaid benefits, restitution, interest, and other contractual damages sustained by Victory.

89.    As a result of Defendants' breaches of contract, Plaintiffs have incurred attorneys' fees and costs, which it is entitled to recover against Defendants.

## IV.    Breach of duty of good faith and fair dealing, non-ERISA.

90.    Plaintiffs incorporate herein the preceding paragraphs.

91.    As set forth more fully above, with respect to the Humana Plans that are not employee welfare benefit plans governed by ERISA, they are nonetheless valid and enforceable insurance contracts.  As such, the Humana Plans contain an implied duty of good faith and fair dealing.

92.    Defendants, as the obligors under the Humana Plans, owed the Humana Subscribers a duty of good faith and fair dealing with respect to said Humana Plans.

93.    As set forth more fully above, the Humana Subscribers received health care services at Victory and executed "Assignment of Benefit" forms, among other documents, in which they assigned to Victory their right to benefits under the Humana Plans for the services that Victory provided to the Humana Subscribers.

94.    By virtue of these assignments, Defendants also owe this duty of good faith and fair dealing to Victory.

95.    Defendants breached their duty of good faith and fair dealing owed to Humana Subscribers and Victory, as assignee of rights and benefits under the Humana Plans, in a number of ways, described more fully above.

96.    Without limitation, Defendant's breaches include, but are not limited to, the following:

i.    Defendants' inadequate reimbursement to Victory relative to Victory's charges for the health care services Victory provided to the Humana Subscribers, when Defendants' liability for those amounts was reasonably clear;

ii.    Defendants' failures to provide Victory with adequate written explanations for the failure to reimburse all or a portion of Victory's claims for the services provided to Humana Subscribers;

iii.    Defendants' failures to reimburse Victory's charges for the health care services provided to the Humana Subscribers, and their failures to provide adequate written explanations for the failure to pay all or a portion of such claims, within the statutorily prescribed time frames;

iv.    Defendants' improper and unauthorized offsets resulting in very low or zero payments on subsequent unrelated claims submitted and supposedly approved;

v.    Defendants' arbitrary methodology for determining whether and the amount to reimburse Victory for the services Victory provided to Humana Subscribers; and

vi.    Defendants' patently inadequate explanations for their under-reimbursements to Victory.

97.    Defendants' conduct in derogation of their duty of good faith and fair dealing under the Humana Plans has deprived Victory of its reasonable expectations and benefits as assignee of benefits under the Humana Plans, and Plaintiffs sue for such amounts.

**V.    Breach of fiduciary duty.**

98.    Plaintiffs incorporate herein the preceding paragraphs.

26

99.    At all relevant times, Defendants were the insurer, plan administrator, claim administrator, fiduciary, relevant party-in-interest, and/or the obligor for the Humana Plans.  As such, Defendants owed and still owe the Humana Subscribers fiduciary duties under the Humana Plans.

100.    As set forth more fully above, Humana Subscribers have received health care services at Victory and executed "Assignment of Benefits" forms, among other documents, in which they assigned to Victory their rights to benefits under the Humana Plans for the services that Victory provided to the Humana Subscribers and any claim they may have for breach of fiduciary duty.

101.    By virtue of these assignments, Defendants owe this fiduciary duty to Victory.

102.    Defendants breached their fiduciary duties owed to Victory in a number of ways, described more fully above. For example, Humana breached its duties to Humana Subscribers and Victory as assignee by failing to pay and underpaying claims not in accordance with the terms of the applicable plans, and doing so in an arbitrary fashion.  In addition, Humana breached its duties to Humana Subscribers and Victory as assignee by engineering improper and unauthorized offsets as described above.  Specifically, Humana acted as a fiduciary to Victory as assignee because they exercised discretion in determining whether plan benefits would be paid, and if so, at what amount. The exercise of discretion in such determinations of plan benefits is an inherently fiduciary function that must be carried out in accordance with the terms of the applicable plans, not in a manner to maximize the interests of Humana.

103.    By engaging in such conduct described above, Humana failed to act with the care, skill, prudence and diligence that a prudent plan administrator would use in the conduct of an

enterprise of like character or to act in accordance with the documents and instruments governing the applicable plans.  ERISA §§ 404(a)(1)(B) and (D), 29 U.S.C. §§ 1104(a)(1)(B) and (D).

104.    As a fiduciary of group health plans under ERISA, Humana owes beneficiaries a duty of loyalty, defined as an obligation to make decisions in the interest of beneficiaries, and to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of the beneficiaries.  Humana violated its fiduciary duty of loyalty by, among other things, determining whether plan benefits would be paid, and/or determining the amounts of plan benefits that would be paid, to those plan beneficiaries based on maximizing benefits to itself rather than making determinations under the terms of the applicable plans.  In addition, Humana made unilateral and unauthorized offsets across plans to the detriment of the Humana Subscribers and Victory, as an assignee.

105.    Victory is entitled to relief for each Defendants' violation of its fiduciary duties under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including restitution, injunctive and declaratory relief, and its removal as a breaching fiduciary.

106.    As the result of Defendants' violations of their fiduciary duties, Victory has suffered substantial damages and Plaintiffs now sue for all such amounts.

## VI.    Promissory estoppel.

107.    Plaintiffs incorporate herein the preceding paragraphs.

108.    Defendants represented to Victory that the medical treatment sought by the Humana Subscribers at Victory was a covered procedure under the Humana Plans, and that the fees associated with that treatment were covered charges under the Humana Plans.  Based on Defendants' statements that the patients seeking medical care and treatment had active coverage

and benefits, Victory reasonably understood that some payment would be forthcoming for the hospital services provided at Victory related to these procedures.

109.   Victory provided hospital services to those Humana Subscribers in reliance on Defendants' statements regarding coverage and benefits.  In the absence of Defendants' statements that they would make remuneration for the fees associated with this treatment, Victory would not have provided the hospital services.  This reliance was foreseeable as Defendants' representations were made in the context of telephone calls from Victory's billing agents to verify and pre-certify coverage prior to the hospital services being provided, and there was no ability for Victory to learn, separate and apart from Defendants' representations, whether Defendants considered the fees related to these hospital services to be covered charges under the Humana Plans.

110.   As a result of Victory's reliance on Defendants' statements, Victory has suffered and continues to suffer injury, including money damages, and injustice can only be avoided by Defendants honoring their previous promises.

**VII.    Negligent misrepresentation.**

111.   Plaintiffs incorporate the preceding paragraphs.

112.   On a number of occasions, Defendants represented to Victory that certain Humana Subscribers had benefits under the Humana Plans; that there were no applicable exclusions; and that the relevant medical services were pre-certified and in some cases, pre-authorized.

113.   In addition, on many occasions, Defendants would provide to Victory the basis under which the Humana Plan at issue determined out-of-network benefits when the Humana Plan actually provided for such benefits to be determined in a manner contrary to what was represented to Victory.  With respect to approximately 177 claims, Humana representatives verified to Victory

that its healthcare services would be reimbursed at usual and customary charges or reasonable and customary rates.

114.    Victory relied on each of these representations and provided medical services to the Humana Subscribers. The representations and omissions made by the Defendants were (i) made in the course of their business or in connection with a transaction in which they had a pecuniary interest, (ii) false information provided for Victory's guidance and, (iii) made without the exercise of reasonable care or competence in obtaining and/or communicating the information.  Victory detrimentally relied upon the representations from Defendants of the Humana Subscribers' precertification and that Victory would be compensated for its healthcare claim under the Humana Plan when submitted.  These acts and omissions of the Defendants constitute negligently false representations.  Because of its reliance on Defendants' negligently false representations, Victory has been directly and proximately injured in the sum of at least $7 million in the aggregate.  If Victory had known that the Defendants' representations were false, Victory would not have agreed to provide the services to Humana Subscribers. The claims covered by this cause of action are shown on the attached Schedules 3 and 4.

## VIII.    Insurance Code violations.

115.    Victory incorporates and re-alleges the allegations set forth above.

### i.    *Overview of claims.*

116.    It is common practice and customary in the health care industry for health insurance companies, health plans, PPOs, etc., to issue insurance cards which have printed thereon pertinent contact information for the insurance verification agents of insurance companies to verify insurance coverage and benefit levels to hospitals.  Using these insurance cards, hospitals call insurance verification agents to verify the following important information:

- to confirm that an individual has benefits under a health plan/insurance policy;

- to discover what coverage and level of benefits are applicable to an individual; and

- to discover where the hospital should submit its claim for payment, if the hospital makes the financial decision to accept that particular coverage and level of benefits and provides the care in question to that individual/prospective patient.

117.  Hospitals have no other means of verifying coverage and benefits for a prospective patient other than calling an insurance verification agent.  Therefore, it is pivotal that the insurance verification agents hired by an insurance company or plan are well qualified, well trained, and well supervised individuals, who are capable of consistently communicating **_clearly_** and **_accurately_** all of the pertinent coverage and benefit information to the hospitals.  It is well known in the industry that hospitals must be able to rely upon the coverage and benefit information provided by the insurance verification agents in making the very important financial decision of whether to provide expensive healthcare services to a prospective patient.  If the information provided by an insurance verification agent to the hospitals is **_inaccurate_** or **_incomplete_**, the hospitals can be severely damaged financially.  For decades Texas courts have taken judicial notice of these commercial realities, customs, and routine practices. *See Hermann Hospital v. National Standard Ins.*, 776 S.W.2d 249, 254 (Tex. App.—Houston [1st Dist.] 1989, no writ) (holding that hospitals can sue to recover the hospital's damages proximately caused by insurance companies' misrepresentations about the health coverage and benefits available to hospitals for their treatment of patients).

118.  Defendants pre-certified the Humana Subscribers' benefits under the Humana Plans and certified that the medical services were medically necessary; no exclusions applied; the benefit levels covered the amount of the projected healthcare costs; and that Victory would be compensated for its services.  However, the insurance verification agents of the Defendants

provided *inaccurate, incomplete* and *untimely information* to Victory.  In addition, in many cases Humana represented to Victory that the out-of-network benefits would be calculated on the basis of usual and customary charges or reasonable and customary rates when, in fact, the Humana Plans at issue provided a wholly different manner in which to determine the benefits.  Humana's insurance verification agents provided *inaccurate, incomplete* and *untimely information* to Victory.  These acts and failures to act constitute multiple violations of the Texas Insurance Code for which the Defendants are liable.

119.    Victory, as assignee and successor of the Humana Subscribers, brings this cause of action for injuries caused by the Defendants acts in violation of Tex. Ins. Code §§ 541.051, 541.052, 541.060; and 542.046(a).

**ii.    *Violations of Texas Insurance Code.***

120.    Plaintiffs' cause of action arises out of the following violations of the Texas Insurance Code:

A.    Texas Insurance Code, § 541.051, as follows:

make, issue, or circulate or cause to be made, issued or circulated, an estimate, illustration, circular or statement misrepresenting with respect to a policy issued or to be issued the terms of the policy, benefits or advantages promised by the policy.

B.    Texas Insurance Code, § 541.052, as follows:

make, publish, disseminate, circulate, or place before the public or directly or indirectly causing to be made, published, disseminated, circulated, or placed before the public an advertisement, announcement, or statement containing an untrue, deceptive, or misleading assertion, representation, or statement regarding the business of insurance of a person in the conduct of the person's insurance business.

C.    Texas Insurance Code, § 541.060, as follows:

(a) and (b):    It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to

32

misrepresent to a claimant a material fact or policy provision relating to coverage at issue.

121.    Victory has suffered actual damages as a result of these violations of the Texas Insurance Code in a sum of at least $7 million, for which Plaintiffs sue the Defendants.

122.    Defendants knowingly committed each of the foregoing acts with actual knowledge of the falsity, unfairness, or deception of the foregoing acts and practices in violation of the Texas Insurance Code.

123.    Victory would show that as the Defendants' conduct was committed "knowingly," Victory is entitled to three (3) times the actual damages as provided under Texas Insurance Code § 541.152, plus reasonable attorney's fees, and costs of suit, all for which amount Plaintiffs hereby seek relief.

124.    Defendants' conduct as alleged above has made it necessary for Plaintiffs to employ the undersigned attorney to represent it in this lawsuit, thus entitling Plaintiffs to recover its reasonable and necessary attorney's fees in this action under Tex. Ins. Code § 542.060(a)-(b) for which amount Plaintiffs hereby seek relief.

125.    Plaintiffs would show that all conditions precedent have been performed, or excused or otherwise satisfied.  Plaintiffs would further show that any technical notice requirement, if any existed, should be deemed waived and further excused since imposing such would cause an extreme hardship and such technical requirement is not essential.

126.    Additionally, if declaratory relief becomes necessary, Plaintiffs request that it be awarded his costs and reasonable and necessary attorney's fees on its behalf incurred pursuant to Tex. Civ. Prac. & Rem. Code § 37.009.

**IX.    Attorneys' Fees.**

127.    Victory incorporates and re-alleges the allegations set forth above.

33

128.    Pursuant to ERISA, Tex. Bus. & Comm. Code §§ 38.001, et seq., the Tex. Civ.

Prac. & Rem. Code, and Fed. R. Civ. P. 54(c), Victory is entitled to an award of attorneys' fees.

### Conditions Precedent

129.    All conditions precedent to Plaintiffs' recovery and claims have been performed or

have occurred.

### Jury Demand

130.    Plaintiffs demand a jury trial for all causes of action for which they have a right to

a jury trial.

### Conclusion & Prayer

Wherefore, Plaintiffs demand judgment in its favor against Defendants as follows:

i.      Declaring that Defendants have breached the terms of the Humana Plans
        with regard to out-of-network benefits and awarding damages for unpaid
        out-of-network benefits for the amounts set forth on Schedules 1 and 2
        attached hereto, as well as awarding injunctive and declaratory relief to
        prevent Defendants' continuing actions detailed herein that are
        unauthorized by the Humana Plans;

ii.     Declaring that Defendants failed to provide a "full and fair review" under §
        503 of ERISA, 29 U.S.C. § 1133, and applicable claims procedure
        regulations, and that "deemed exhaustion" under such regulations is in
        effect as a result of Defendants' actions, as well as awarding injunctive,
        declaratory and other equitable relief to ensure compliance with ERISA and
        its claims procedure regulations;

iii.    Awarding damages based on Defendants' breach of contract with respect to
        claims covered under Humana Plans not governed by ERISA;

iv.     Awarding damages based on Defendants' misrepresentations and
        nondisclosures regarding the existence of benefits for hospital services
        based on promissory estoppel;

v.      Awarding damages based on Defendants' negligent misrepresentations
        regarding the method upon which Victory's reimbursements would be
        calculated under the Humana Plans with respect to these claims identified
        on Schedules 3 and 4 attached hereto;

vi.     Awarding damages based on Defendants' improper and unauthorized

offsets for the amounts set forth on Schedule 5 and 6 attached hereto, as well as an awarding injunctive and declaratory relief to prevent Defendants' continuing offsets;

vii.    Awarding damages based on Defendants' violations of the Texas Insurance Code, including treble damages for knowing violations;

viii.    Awarding lost profits, contractual damages, and compensatory damages in such amounts as the evidence at trial shall show;

ix.    Awarding exemplary damages for Defendants' intentional and tortious conduct in such amounts as will be shown;

x.    Awarding restitution for reimbursements improperly withheld and set off by Defendants;

xi.    Declaring that Defendants have violated the terms of the relevant plans and/or policies of insurance covering the Humana Subscribers;

xii.    Requiring Defendants to make full payment on all previously denied charges relating to the Humana Subscribers;

xiii.    Requiring Defendants to pay Victory the benefit amounts as required under the Humana Plans;

xiv.    Awarding reasonable attorneys' fees, as provided by common law, federal or state statute, or equity, including Chapter 38.001 *et seq.* of the Texas Civil Practice and Remedies Code; § 502(g) of ERISA, 29 U.S.C. § 1132(g); and the Texas Insurance Code;

xv.    Awarding costs of suit;

xvi.    Awarding pre-judgment and post-judgment interest as provided by common law, federal or state statute or rule, or equity; and

xvii.    Awarding all other relief to which Plaintiffs are entitled.

Respectfully submitted,

**Hawash Meade Gaston
Neese & Cicack LLP**

*/s/ Walter J. Cicack*
Walter J. Cicack
Texas Bar No. 04250535
wcicack@hmgnc.com
Andrew K. Meade
Texas Bar No. 24032854
ameade@hmgnc.com
2118 Smith Street
Houston, Texas 77002
(713) 658-9001 - tel
(713) 658-9011 - fax

**Attorneys for Plaintiffs**